IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOYCELYN A. C.,

                         Plaintiff,

            v.                              Civil Action No.
                                            6:20-CV-1200 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY

                         Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.              PETER W. ANTONOWICZ, ESQ.
ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          RAMI VANEGAS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that she was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which she

has applied.  The matter has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern

District of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination resulted from

the application of proper legal principles and is supported by substantial

evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in April of 1965, and is currently fifty-six years of

age.  She was fifty-one years old at her alleged onset date of disability –

August 22, 2016 – and fifty-two years old the time of her application for

benefits in April of 2017.  Plaintiff stands five-foot and three inches in

height, and weighs approximately one hundred and ninety-two pounds.

Plaintiff resides in an apartment with her husband in Rome, New York.

Plaintiff reported attending school up to the tenth grade and later

attaining her GED.  She completed training as a certified nursing assistant

("CNA") and was licensed as a CNA in North Carolina.  She stated that she

eventually left her job as a CNA because she could not meet the standing and lifting requirements of the job.

Plaintiff alleges that she suffers from a traumatic brain injury ("TBI") that causes difficulty with memory and concentration as well as severe headaches two or three times per week. She also alleges experiencing body pain as a result of musculoskeletal impairments, and symptoms related to mental impairments such as depression, anxiety and posttraumatic stress disorder ("PTSD"). Plaintiff underwent surgery following a motor vehicle accident in 2011, and has three metal plates in her face as a result. As is relevant to her applications, plaintiff has obtained treatment for her physical impairments primarily with Associated Medical Professionals of New York, Rome Memorial Hospital, Rome Neurology, Dr. Ajay Goel, Delta Medical, and Oneida Healthcare. Plaintiff has addressed her mental impairments with medication and therapy through New Hartford Psychiatric Services.

Plaintiff has a driver's license, but states that she does not drive because she experiences anxiety stemming from her 2011 accident even when just sitting in the driver's seat of a car. Due to the TBI suffered during that accident, plaintiff has trouble remembering things, has decreased attention, is easily distracted, and is fatigued during the day. Plaintiff also

claims to have difficulty handling stress.  She suffers from headaches two or three times per week that typically last for three or four hours, but can occasionally last for days, although she notes that gabapentin makes her headaches bearable.  Plaintiff's husband puts away the laundry because it gets confusing for her to do, and he helps her cook because she is unable to bend.  Plaintiff claims also to experience difficulty with household chores such as sweeping and vacuuming.

In addition to her other physical and mental conditions, plaintiff has a kidney disease that sometimes causes her to urinate frequently in the morning.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on April 11, 2017.[1]  In support of her applications, she claimed to be disabled due to hypokalemia, hypothyroidism, osteoarthritis, TBI, gastritis, stage II kidney disease, Methicillin-resistant Staphlococcus aureus ("MRSA), peptic ulcer disease, and a bowel obstruction.

---

[1]    For the purposes of her Title II application, plaintiff was last insured on June 30, 2018.

A video hearing was conducted on May 6, 2019, by ALJ Melissa Hammock, to address plaintiff's applications.  Following that hearing, ALJ Hammock issued an unfavorable decision on July 11, 2019.  That opinion became a final determination of the agency on August 18, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Hammock applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including TBI, a mild neurocognitive disorder, posttraumatic headaches, degenerative disc disease in her lumbar and cervical spine, degenerative joint disease in her left knee, obesity, a major depressive disorder, a generalized anxiety disorder, a borderline personality disorder, bipolar disorder, and PTSD.  As part of her step two finding, ALJ Hammock found that plaintiff's hypokalemia, hypothyroid, peptic ulcer, kidney disease, gastritis, MRSA, and bowel obstruction do not qualify as severe impairments.

At step three, ALJ Hammock examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in those regulations, specifically considering Listings 1.02, 1.04, 11.02, 11.18, 12.04, 12.06, 12.08, and 12.15. The ALJ also considered whether plaintiff's obesity meets or medically equals a listed impairment, although she noted that there is no specific Listing related to obesity.

ALJ Hammock next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light work,[2] as defined by the controlling regulations,

---

[2]    By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

with the following exceptions:

> [the claimant can] frequently climb ramps and stairs, stoop, kneel, crouch, crawl, and reach overhead; she can occasionally climb ladders, ropes, and scaffolds; she must avoid concentrated exposure to pulmonary irritants; she can perform simple routine tasks, but not at a production rate pace; she can make simple work related decisions; and she can have occasional interaction with the public.

ALJ Hammock went on at step four to conclude that plaintiff is unable to perform the demands of her past relevant work. Proceeding to step five, the ALJ elicited the testimony of a vocational expert regarding how plaintiff's limitations would impact the occupations that she could perform with the range of light work specified above and concluded, based on the vocational expert's testimony, that plaintiff remains able to perform available unskilled work in the national economy, including as a garment bagger, mail clerk, and marker. Based upon these findings, ALJ Hammock determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on September 29, 2020.[3] In support

---

[3]    This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred in failing to account in the RFC finding for the "moderate" limitations she discerned in the areas of concentration, persistence and maintaining pace and caring for and managing oneself at step three of the sequential evaluation, when evaluating the "B criteria" of the Listing's mental impairment section.  Dkt. No. 15.  Specifically, plaintiff argues that the ALJ failed to account for limitations in her abilities to concentrate and maintain attention despite explicitly acknowledging that the record documents such limitations.  *Id.*  Plaintiff asserts that, had the ALJ properly accounted for those moderate limitations in the RFC, she would have been found to have a need to be off-task more than ten percent of the workday and, based upon the testimony of the vocational expert, therefore would have been found disabled.

Oral argument was conducted in this matter, by telephone, on January 26, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the

administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

11

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work. *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills. *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.   <u>Analysis</u>

In her sole challenge in this appeal, plaintiff maintains that the ALJ

improperly evaluated her mental impairments and the functional limitations

resulting from those mental impairments by failing to reconcile the

moderate limitations assessed at step three of the sequential evaluation in

the areas of concentrating, persisting, and maintaining pace, and in caring

for self with the limitations ultimately included in the RFC. Dkt. No. 15, at 7-

13. Specifically, plaintiff argues that, had the ALJ properly accounted for

those moderate limitations, she should have limited plaintiff to being off-

task more than ten percent of the workday, and thus should have found plaintiff disabled based on the vocational expert's testimony.  *Id.*

In assessing whether a claimant's mental impairment is severe, the ALJ must apply a "special technique," in which he or she first evaluates the claimant's pertinent signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If a medically determinable mental impairment exists, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of that impairment.  *Id.* The ALJ must then rate the degree of functional limitation that results from that medically determinable impairment in four broad functional areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(b)(2)-(4), 416.920a(b)(2)-(4). These areas are rated on a five-point scale of none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(b)(4), 416.920a(b)(4).  A rating or "none" or "mild" in these areas generally results in a conclusion that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  If a claimant is

13

found to have a severe impairment after application of the special

technique, but that impairment does not meet or equal the severity of any

listed impairment, the ALJ will "then assess your residual functional

capacity."  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).[4]  When

assessing whether the claimant meets or equals a mental listing, in order to

satisfy the "B criteria" of those listings, the claimant's impairment "must

result in 'extreme' limitation of one, or 'marked' limitation of two, of the four

areas of mental functioning."  20 C.F.R. § 404, Subpart P, Appendix 1,

12.00(A)(2)(b).

Notably, plaintiff does not contend in his brief that the ALJ failed to

properly apply the special technique for assessing the "B criteria" at step

two or three, or that the ALJ's findings pursuant to that technique are

erroneous or unsupported by substantial evidence.  Rather, plaintiff argues

solely that the limitations in the ALJ's RFC are not consistent with the

findings of "moderate" impairment she made pursuant to that technique,

---

[4]    According to agency policy, the findings regarding functional ratings in the four applicable areas made using the special technique are used not only to determine the severity of the claimant's mental impairments, but also for determining whether the claimant meets or equals a listing.  *See* Program Operations Manual System ("POMS") DI 24583.005(D), (F) (noting that the four areas are commonly referred to as the "paragraph B criteria" and that, when assessing whether the claimant meets or equals a listing, the ALJ "compare[s] the medical evidence of record about the mental impairment(s) *and the rating of the degree of functional limitation* with the criteria of the appropriate listed mental disorder") (emphasis added).

which the ALJ used when assessing whether plaintiff met or equaled a listing.  Plaintiff's argument is unavailing for three reasons.

First, the Second Circuit Court of Appeals has made clear that consideration of the "B criteria" and the findings at the RFC stage of the sequential evaluation represent separate inquiries based on differing standards, and therefore a failure to include limitations in the RFC despite finding "moderate" limitations when assessing the "B criteria" does not render an ALJ's decision internally inconsistent or constitute error.[5]  *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014) (finding no error where the ALJ found "moderate" difficulties in the areas of social functioning and concentration, persistence and pace, but did not include explicit, perfectly corresponding limitations in those areas in the RFC because the RFC finding was supported by the ALJ's weighing of the opinion and other evidence).  Accordingly, the fact that the RFC finding may not perfectly correspond with the ALJ's findings related to the "B criteria" at earlier steps of the sequential evaluation is not legal error, so long as the RFC finding is supported by substantial evidence.

Second, contrary to plaintiff's argument, the ALJ's RFC is not

---

[5]     The ALJ in fact explicitly acknowledged this distinction in her decision.  *See* Administrative Transcript ("AT") at 16.

inconsistent with her finding regarding the "B criteria."  In finding that plaintiff had a moderate limitation in the area of concentrating, persisting and maintaining pace, the ALJ acknowledged that plaintiff reported difficulties such as becoming easily confused, needing more time and repetitions of instructions to complete tasks, and having disorganized thinking, but also noted that plaintiff was routinely observed to be attentive on examinations and was found to have sufficient attention to complete testing during the consultative examination.  AT 16.  To accommodate those deficits, the ALJ limited plaintiff to performance of simple routine tasks not at a production rate pace, and found that she can make simple work-related decisions and can have occasional interaction with the public.

The ALJ did not, as plaintiff now argues, "fail to make any references to the plaintiff's deficits in concentration in her finding of RFC."  Dkt. No. 15, at 9.  Rather, the limitation to simple routine tasks and decisions with no production rate pace directly addresses plaintiff's concentration deficits. *See Tana S. v. Berryhill*, 17-CV-0414, 2018 WL 4011560, at *7 (N.D.N.Y. Aug. 22, 2018) (Hummel, M.J.) (finding no error in the ALJ's accounting for symptoms of fatigue and "moderate" limitations in concentration, persistence, and pace where the RFC limited the plaintiff to simple, routine tasks and the RFC was supported by substantial evidence).  Plaintiff has

not carried her burden of showing how these limitations fail to account for the extent of difficulties with concentration, persistence, and pace supported by the record.

I note, moreover, that much of the evidence upon which plaintiff relies to support the existence of concentration deficits is either based upon her own subjective reports or a physician's statement that explicitly is grounded in her subjective reports. In assessing plaintiff's subjective reports, the ALJ found that those reports were only partially consistent with plaintiff's treatment records. AT 18. Testing performed by Dr. Toby Davis, who conducted a neuropsychological assessment of plaintiff in October of 2017, shows that plaintiff was moderately impaired in the domain of attention, and that she "displayed reduced auditory attentional capacity, reduced working memory for orally presented information, compromised visual spatial working memory, as well as visual scanning, and diminished psychomotor speed, concentration, sustained attention, focused or selective attention, and information processing speed." AT 621. However, on other examinations by medical sources, plaintiff was specifically observed to have attention within normal limits. AT 703, 942. Consultative examiner Dr. Sarah Long, for example, observed that plaintiff's attention and concentration were intact during testing at a consultative examination

undertaken in June of 2017.  AT 592.  The ALJ's limitation of plaintiff to simple tasks and work-related decisions with no production rate pace accounts for both the objective medical evidence showing conflicting degrees of attentional or concentration deficits and, to the extent found to be consistent with the treatment evidence, plaintiff's subjective reports that she becomes confused sometimes or requires more time to understand instructions.

As to the moderate limitation in the area of adapting and managing herself, plaintiff argues that the ALJ should have included further limitations based on her emotional regulation difficulties.  However, plaintiff fails to cite any evidence to support her assertion that those difficulties impose functional restrictions aside from her own reports.  Dkt. No. 15, at 12.  In assessing this area, the ALJ mentioned plaintiff's inability to drive due to anxiety related to her previous motor vehicle accident, reports of difficulty performing household chores due to confusion and loss of focus, observations that plaintiff had good insight and judgment, and that she displayed appropriate grooming, hygiene and dress.  AT 16.  There is no indication that plaintiff suffered from emotional dysregulation that imposed limitations on her functioning other than her own sporadic self-reports, which, again, the ALJ found were only partially consistent with her

treatment records – a finding that plaintiff has not challenged.  AT 18.

Further, plaintiff's citation to select pieces of evidence from Dr. Toby Davis and Dr. Marcellus Cephas represents little more than a request to reweigh the medical evidence, a function reserved in the first instance to the Commissioner.  *Veino*, 312 F.3d at 586.  Notably, as to Dr. Cephas, the ALJ explicitly found the opinion cited by plaintiff to be unpersuasive for multiple valid reasons, and plaintiff has not challenged that finding.  AT 25. Plaintiff has simply not met her burden to show that the ALJ's weighing of the evidence and conclusion that greater RFC limitations related to concentration and attention were not warranted was unreasonable or unsupported by substantial evidence.  *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185, 2016 WL 7223338, at *8 (N.D.N.Y. Nov. 18, 2016) (Carter, M.J.) (noting that, "[w]hen applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)).

Plaintiff specifically has not shown that she should have been limited

in such a way that would result in her needing to be off-task for more than ten percent of the workday.  Because, ultimately, it is plaintiff's burden to prove a more restrictive RFC than that assessed by the ALJ, her failure to point to evidence which persuasively supports that the ALJ's conclusion regarding her RFC limitations was erroneous is fatal to her argument.

Lastly, at oral argument, plaintiff argued for the first time that the ALJ erred in failing to assess the "opinion" of Dr. Davis.  Regardless of whether or not this issue was waived by plaintiff's failure to raise it in her brief, I recommend a finding that the argument is baseless because Dr. Davis did not provide any functional opinion that the ALJ was required to specifically assess under 20 C.F.R. §§ 404.1520c, 416.920c.  The regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in relevant abilities, including, "[y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

In his report, Dr. Davis does not provide any such medical opinion.

Rather, Dr. Davis recounted plaintiff's relevant history, noted his observations, reported the results of testing and questioning, which included the level of impairment shown on testing of broad domains, and provided treatment recommendations and highlighted issues for her future treatment providers to keep in mind.  AT 618-25.  His report does not contain any statements that represent an opinion of work-related functional abilities.

During oral argument, plaintiff focused particularly on a statement by Dr. Davis that plaintiff had "marked peculiarities in thinking," and that her "thought processes are likely to be marked by confusion, distractibility, and difficulty concentrating, and she may experience her thoughts as blocked, withdrawn, or disrupted by 'noise' in the environment."  AT 623.  These statements, however, were made in the context of Dr. Davis discussing plaintiff's "self-description," not based on his objective observations or testing, and further are couched in speculative language and do not appear to represent Dr. Davis' assessment of her work-related functional capacity. Overall, there is simply nothing in Dr. Davis' report that would have required the ALJ to assess it as a medical opinion.  The ALJ discussed Dr. Davis' examination findings and the results of his testing, including the notation regarding plaintiff's thought processes, when assessing the

21

evidence.  AT 22.  It is therefore clear that the ALJ considered Dr. Davis'
findings and recommendations when assessing all of the evidence and
plaintiff's functioning, and there is no basis for remanding based on the
ALJ's treatment of those findings.

Based on the foregoing, I recommend that plaintiff's arguments be
rejected, and the ALJ's findings be affirmed.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the
plaintiff in support of her challenge to the Commissioner's determination, I
recommend a finding that the Commissioner's determination resulted from
the application of proper legal principles and is supported by substantial
evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED,
defendant's motion for judgment on the pleadings (Dkt. No. 20) be
GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be
DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days
within which to file written objections to the foregoing report.  Such
objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT
TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     February 7, 2022
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge